Lewis N. Levy, Esq. (S.B. #1987)
**LEVY, FORD & WALLACH**
3660 Wilshire Blvd., Suite 600
Los Angeles, CA 90010
Telephone: 213-380-3140
Facsimile:  213-480-3284

Attorney for Defendants
International Union of Operating Engineers,
Local 501 AFL-CIO

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA – SOUTHERN DIVISION

|  |  |
|---|---|
| WATSON NEWMAN, | ) Case No.:  2:10-cv-00550 |
| Plaintiff, | ) |
|  | ) **FINDINGS OF FACT AND** |
|  | ) **CONCLUSION OF LAW;** |
|  | ) **ORDER** |
|  | ) |
| CORNER INVESTMENT COMPANY, LLC | ) |
| D/B/A BILL'S GAMBLIN' HALL AND | ) |
| SALOON AND INTERNATIONAL UNION | ) |
| OF OPERATING ENGINEERS, LOCAL NO. | ) |
| 501., AFL-CIO, | ) |
| Defendants. | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

This action came on regularly for hearing before the Court on May 17, 2012, on the

motions for summary judgment brought herein by defendant International Union of Operating

Engineers, Local No. 501(Dkt. 96) (hereafter " Local 501") and defendant

Corner Investment Company, LLC, d/b/a Bill's Gamblin' Hall & Saloon (Dkt. 95) (hereinafter

"Corner") in the above captioned matter.

1

Having considered plaintiff's opposition (dkt. 97), the reply briefs (dkt. 98 and 99) the arguments presented at hearing, this court: a) finds there are no genuine issues of material fact; b) *grants* the motions for summary judgment (#95 and #96) in their entirety as to each of plaintiff's claims; and c) makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1.      Defendant Local 501 is a labor organization that primarily represents stationary building engineers throughout Southern California and Southern Nevada.  See Complaint (Dkt. 1, p.1, para. 3).

2.      Defendant Corner is a limited liability company that does business as "Bill's Gamblin' Hall & Casino," a casino and hotel property located in Las Vegas, Nevada. See Complaint (Dkt. 1, p. 1, para. 2).

3.      Local 501 has maintained a long-standing collective bargaining relationship with both Corner and its predecessor in interest, the "Barbary Coast Hotel and Casino."  The most recent collective bargaining agreement between Corner and Local 501 has a term of April 1, 2008, through March 31, 2013 (the "Agreement").  See Defendants' Joint Exhibit (hereafter "JX") 5 (Dkt #95); JX 2 at 13:5-14 (Cozart).

4.      Plaintiff Watson Newman ("Newman") was a member of the bargaining unit represented by Local 501.  Newman was hired as a maintenance engineer by Corner's predecessor in interest, the Barbary Coast Hotel, on or around June 23, 1999.  Approximately one year later, Newman accepted a promotion and pay raise to the separate job classification of assistant chief engineer, which is defined in the agreement, and was employed and paid in that job classification at all times thereafter.  JX1 at 19:1-4 (Newman deposition).

5.      In February 2007, Corner acquired the Barbary Coast Hotel.  At all relevant times before and after Barbary Coast became Corner, employment for bargaining unit members

2

represented by Local 501 was governed by a collective bargaining agreement.  The provisions of the agreements relevant to this case remained unchanged throughout Newman's employment. Specifically, article 15 of both the predecessor agreement and the subsequently negotiated agreement in effect at the time of Newman's discharge define three job classifications for engineers and specify the rights, duties and obligations of each.  Relative to Newman's classification of assistant chief engineer, article 15, § 15.02(a) of the agreement states as follows:

### Chief Engineer and Assistant Chief Engineer

The Chief Engineer shall be in charge of the Operations and Maintenance in the plant. Neither the Chief Engineer nor the Assistant Chief Engineer shall be covered by Articles 3, 12 or 13 of the Agreement but they shall be governed by and subject to all other provisions of the Agreement. JX 5 (Dkt #95).

6.      Article 12, section 12.01 of the agreement generally limits Corner's right to discipline or dismiss bargaining unit employees unless it has "just cause" to do so.  JX 5, at pg. 16 (Dkt #95).  Pursuant to article 15, the assistant chief engineer is not covered by article 12.  In other words, pursuant to the clear and unambiguous language of article 15, Corner could discharge chief or assistant chief engineers with or without cause.

7.      Article 13 of the agreement establishes a grievance and arbitration procedure to resolve disputes arising from the agreement.  JX 5 at pp. 19-20.  Pursuant to article 15, chief and assistant chief engineers are also not covered at article 13.

8.      During these proceedings and specifically in opposition to defendants' motions, Newman has repeatedly testified and argued that although he occupied the job classification of assistant chief engineer, held that title and accepted that pay for nearly nine years, he had, in actuality, previously concluded an informal side agreement with the owner of the Barbary Coast wherein he was to be the assistant chief engineer "in name only," performing no duties and

3

having no responsibilities beyond those of any regular maintenance engineer.  Declaration of Watson Newman ("Newman Declaration"), at pg. 2, ¶ 6 (Dkt #55).

9.      Newman failed to produce evidence from which any reasonable juror could conclude that this alleged "side agreement" actually existed.[1]  As explained below, even if he had, the result would not change because any such "side agreement" would be void and unenforceable.

10.     Newman was not an agent of Local 501 for purposes of entering into unauthorized contractual agreements with Barbary Coast or Corner.  Cozart Declaration, at pp. 2-3,  ¶¶ 4, 6 & **7** (Dkt#96).

11.     Local 501 did not authorize Newman to negotiate or execute any side agreements with Barbary Coast or defendant Corner. Cozart Declaration, at pp. 2-3,  ¶¶ 4, 6 & **7** (Dkt#96).

12.     There is no evidence Local 501 was aware of Newman's personal agreement with Barbary Coast at the time it was allegedly made or any time thereafter. Cozart Declaration, at pg. 2, ¶ 4 (Dkt#96).

13.     There is no evidence Corner was aware of any alleged side agreement with Newman when it acquired Barbary Coast.  In fact, the collective bargaining agreement was subsequently renegotiated in 2008, and there is no evidence Newman's alleged side deal was ever discussed or made known to Local 501 or Corner even though Newman was on Local 501's bargaining committee at that time.  Indeed, the language of article 15 remained wholly unchanged from the prior agreement with respect to its treatment of the job classification of assistant chief engineer.

---

[1] In his opposition, Newman offered three pieces of evidence to support his argument: a) his own affidavit; b) the affidavit of Louise Doran; and c) the affidavit of a co-worker, Ernest Romero.  Newman's affidavit contradicted his own deposition testimony in key respects and does not create a genuine issue of fact on this issue.  Louise Doran's affidavit demonstrates she had no personal knowledge of and was not privy to any alleged side agreement between Newman and Barbary Coast.  Similarly, the affidavit of Ernest Romero lacked any foundation on this issue as he was not employed at the time of the alleged side agreement and had no personal knowledge of the alleged agreement.

14.     At no time after the alleged "side agreement" was made between Newman and Barbary Coast was that agreement ratified or approved by Corner or Local 501.  Cozart Declaration, at pp. 2-3,  ¶¶ 4, 6 & **7** (Dkt#96).

15.     In the late summer and fall of 2008, and in response to a nationwide economic crisis, defendant Corner perceived an impending downturn in its business and determined to trim its labor force.  Among other measures, Corner decided to eliminate one employee from its engineering department.  JX 3 at 18, 53 (Danzak).

16.     On October 15, 2008, Corner discharged its assistant chief engineer, Newman, as part of a "USR staff Reduction."  JX 1 at 35:8-36:1 (Newman);  JX 2 at 86:2-7 (Cozart); JX 11 (separation notice).

17.     Newman complained to Local 501, which demanded that Corner immediately re-staff the assistant chief position.  Because Corner refused to do so, Local 501 filed a grievance on October 21, 2008 alleging that Corner had violated  article 15 of the agreement by eliminating the classification of assistant chief engineer and wrongfully terminating Newman (the "2008 Grievance").  JX 2 at 26:1-11 (Cozart); JX 5 at p. 19; JX 13 (grievance).

18.     In connection with the filing and processing of the 2008 grievance, Mr. Cozart, on behalf of Local 501, and Mr. Danzak, on behalf of Corner, had several telephonic and in-person discussions regarding the merits and potential resolution of the grievance.  JX 3 at 25:9-15 (Danzak) ; JX 2 at 29:8-12; 95:8-14 (Cozart).[2]

---

[2] Local 501 asserted that: (i) the agreement expressly created the position of the assistant chief engineer; and (ii) this mandated that defendant Corner continuously staff the position of assistant chief engineer instead of leaving the classification vacant.  Corner asserted that: (i) it had not eliminated the classification, it had simply discharged Newman; and (ii) it had the managerial prerogative under the agreement to decide when and in what numbers to staff that or any other position based on economic need.  JX 3 at 29, 31-32, 44-46, 55, 58-59 (Danzak).

19.     None of those efforts bore fruit with regard to settlement of the 2008 grievance. As such, Local 501 - through a letter dated January 19, 2009 - advised defendant Corner that it was advancing the 2008 grievance to arbitration in accordance with article 13 of the agreement. JX 14 (Dkt #95).

20.     The 2008 grievance was scheduled for arbitration on September 23, 2009.  JX 15. A week prior to the arbitration, Danzak sent Cozart a letter demanding the 2008 grievance be withdrawn because Corner had not "eliminated" the classification of assistant chief engineer and was again accepting applications to fill that position. JX 3 at 31:21-32:7 (Danzak); JX 16.

21.     Cozart and Danzak engaged in further negotiation of the 2008 grievance.  JX2 at 115:11-25; 125:15-129:19; 130:13-132:4 (Cozart); JX 3 at 33:3-5; 45:8-47:9 (Danzak).  During those negotiations, Cozart requested that Corner reinstate Newman. Corner refused.  Cozart ultimately concluded that Corner had the right under article 15 to discharge Newman and that Local 501 would not prevail on that issue if taken to arbitration. Further negotiation resulted in settlement of the 2008 grievance through agreement between Corner and Local 501 dated September 22, 2009 (the "Settlement Agreement").  JX 17.  Pursuant to the settlement agreement, Corner promised to re-staff the assistant chief engineer position and Local 501 agreed to withdraw the grievance.  Id.; see also JX 2 at 115:11-25 (Cozart); JX3 at 33:3-5; 45:9-47:9 (Danzak). Although Local 501 recognized Corner's right to discharge Newman under article 15, and did not believe it could force Corner to reinstate him as assistant chief engineer for Local 501, it nonetheless negotiated for Corner to offer Newman $2,500.00 as part of the settlement. Corner tendered that sum to Newman in compliance with the settlement agreement, but Newman refused to accept those funds.  JX 1 at 71:18-25; 76:2-6 (Newman); JX 2 at 132:4-18 (Cozart).

22.     Prior to re-staffing the position of assistant chief engineer in 2009, defendant Corner created a specific written job description for the assistant chief engineer job classification. JX 9.  It is undisputed that after the 2008 grievance was settled, Corner interviewed and ultimately hired a new assistant chief engineer.  Newman offered no evidence that he: a) formally applied for the new assistant chief engineer position; b) was actually qualified to perform that job pursuant to the new written job description; or c) that Corner did not consider his past performance and qualifications, among other factors, when it declined to reinstate Newman as requested by Local 501 during negotiation and settlement of the 2008 grievance.

23.     Indeed, at the time it decided to trim staff in 2008, defendant Corner specifically considered Newman's poor performance history when it chose to discharge him relative to other engineers in the first place. JX 3 at 54-58 (Danzak).

24.      On September 23, 2009, and upon Newman's demand to do so, Local 501 filed a second grievance against Corner on Newman's behalf (the "2009 Grievance").  The 2009 grievance alleged that Corner breached the agreement by not allowing plaintiff to use his accumulated seniority under article 10 of the agreement to negate his dismissal from employment pursuant to article 15, either by reclaiming the position of assistant chief engineer based on his seniority in that classification or by bumping a less senior employee from the separate classification of maintenance engineer.  JX 1 at 71:8-25; 76:2-6 (Newman); JX 2 at 132:4-18 (Cozart); JX 18 (2009 grievance).

25.     Notably, at the time of his original discharge in October 2008, Newman believed he had seniority rights to "bump" a less senior employee from the separate classification of

maintenance engineer.  However, Newman did not assert those rights in his 2008 grievance. The agreement requires that any grievance, to be valid, must be filed within 15 days of the event giving rise to that grievance. JX 5 at Article 13, § 13.02(b).

26.    Article 10 of the agreement provides that in the event of a curtailment of operations, defendant Corner - where skill and ability between two or more employees of equal or lesser seniority is equivalent - must separate employees on the basis of their seniority. However, neither article 10 nor any other part of the agreement provides for "bumping rights" – i.e., the ability of an employee in one classification to "bump" or displace an employee in another classification with lesser seniority – in the event defendant Corner curtailed operations or dismissed the employee with greater seniority. JX 2 at 132:23-133:16 (Cozart); see also JX 5 at article 10.

27.    In response to the 2009 grievance,  Corner asserted that it had no duty to process that grievance because article 15 of the agreement exempts the assistant chief engineer from article 13, the only provision of the agreement providing grievance and arbitration rights.  JX 2 at 51:3-52:8 (Danzak); JX 19.

28.    After receiving Corner's response, Cozart reviewed the agreement and determined the 2009 grievance lacked merit because (i) article 15 expressly authorized Corner to discharge Newman without cause; (ii) article 15 expressly provided that assistant chief engineers were exempted from article 13 and thus had no grievance rights; and (iii) neither article 10 nor any other part of the agreement provides any form of "bumping rights" that would allow plaintiff to reclaim the assistant chief engineer position or displace a less senior employee from a separate job classification.  JX 2 at 132:23-133:16 (Cozart); JX 1 at 82:4-13 (Newman); JX 20.

29.     In separate correspondence dated October 14, 2009, Cozart advised Corner and plaintiff that Local 501 was withdrawing the 2009 grievance.  JX 2 at 132:23-133:16 (Cozart); JX1 at 82:4-13 (Newman); JX 20 and 21.

30.     In its correspondence to Corner, Local 501 requested that Corner extend all time limits set forth in the agreement to demand arbitration of the second grievance while Newman pursued Local 501's internal procedures to appeal Cozart's determination that the 2009 grievance lacked merit. JX 20; JX 21. There is no evidence in the record that defendant Corner refused that request.

31.     Local 501's Executive Board considered and denied Newman's appeal.  Newman then filed an Unfair Labor Practice charge against Local 501 with the National Labor Relations Board, which also investigated and dismissed Newman's charge. JX 26; JX 27.

## CONCLUSIONS OF LAW

1.     Newman filed this action under Section 301 of the Labor Management Relations Act [29 U.S.C. Section 185].  Essentially, Newman contends that defendant Corner violated the agreement by discharging him in October 2008, then violated the agreement again by not allowing him to exercise seniority to bump a less senior maintenance engineer or to reclaim his old job when defendant Corner re-staffed the assistant chief engineer position in September 2009.  Newman accuses defendant Local 501 of breaching its duty of fair representation by settling the 2008 grievance on the eve of arbitration and by not further pursuing his 2009 grievance after concluding his seniority arguments lacked merit.

2.      Corner did not violate the agreement when it discharged Newman in October 2008, and did not violate the agreement when it refused to reinstate Newman in 2009 based on Newman's claimed seniority.

3.      Local 501 did not violate its duty of fair representation when it settled the 2008 grievance with Corner and did not violate its duty of fair representation when it determined the 2009 grievance lacked merit and withdrew it.

4.      "A union owes a duty of fair representation to those it represents, and an employer must honor the terms of a CBA to which it is a party.  An aggrieved party may bring a hybrid fair representation/§ 301 suit against the union, the employer, or both." *Bliesner v. Communication Workers of America*, 464 F.3d 910, 913 (9th Cir. 2006). That is what Newman has done here.

5.      "In order to prevail in any such suit, the plaintiff must show that the union <u>and</u> the employer <u>have both</u> breached their respective duties." *Bliesner,* 464 F.3d at 913 (emphasis added). 'Such a suit, as a formal matter, comprises two causes of action.  The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement.  The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.  Yet the two claims are inextricably interdependent.  To prevail against either the company or the Union …[employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.' *Id.* (quoting *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164-65, 103 S.Ct. 2281 (1983)).

6.     Regardless of which defendant is the target,  plaintiff's burden of proof is to establish the elements of each claim against both the union and the employer.  Failure to carry that burden against either is fatal to plaintiff's claims against both.  *See id.* at 914.  The district court need not decide one claim prior to another or in any particular order.  *Id.* (affirming summary judgment as to both defendants where plaintiff failed to prove violation of CBA by employer).

7.     In this case, defendants are entitled to summary judgment because plaintiff has failed to establish a breach of the agreement by Corner and failed to establish a breach of the duty of fair representation by Local 501.

## CORNER DID NOT VIOLATE THE AGREEMENT BY DISCHARGING NEWMAN IN 2008

8.     Article 15, § 15.02(a) is clear and unambiguous.

9.     Pursuant to that section of the agreement, Corner had the contractual right to discharge the chief or assistant chief engineer with or without cause and, if it chose to exercise that right, no employee occupying either classification had any right to file a grievance or push the matter to arbitration.  Consequently, Newman's 2008 grievance lacked merit and Corner did not violate the agreement as a matter of law when it discharged Newman.

10.     There is no evidence from which any reasonable juror could conclude that any side agreement existed between Newman and Corner's predecessor in interest that would change this result.  Even had such an agreement been reached, it would be void.

11.     The National Labor Relations Act (NLRA) "extinguishes the [union-represented] employee's power to order his own relations with his employer and

creates a power vested in the chosen representative to act in the interests of all employees

. . . . [O]nly the union may contract the employee's terms and conditions of employment."

*NLRB v. Allis-Chalmers*, 388 U.S. 174, 180 (1967).

12.     The execution of separate agreements with individual employees, absent

authorization by the employee's designated representative, constitutes illegal direct dealing

under the NLRA. *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678 (1944);   *Milne

Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1417 (9th Cir. 1991). Individual

agreements that are the product of direct dealing are unenforceable.  *AK Engineering and

Local Lodge S-5*, 1993 NLRB LEXIS 485 (1993).

13.     Moreover, there is no evidence that Local 501 or Corner, the only parties to

the operative collective bargaining agreement were even aware of, much less approved or

ratified Newman's alleged side agreement.  Consequently, Newman may not rely on an

alleged past practice to support his contention that he was the assistant chief engineer "in

name only."

14.     In order to be binding on both parties, any past practice must be (1) unequivocal;

(2) clearly enunciated and acted upon; and (3) readily ascertainable over a reasonable period of

time as a fixed and established practice accepted by both parties. *How Arbitration Works*,

Elkouri & Elkouri, 6th Ed., at Chapter 12.2, pg. 608.  As a matter of law, Newman failed to meet

the criteria to establish an enforceable past practice and no reasonable juror could conclude

otherwise on these facts. *Celanese Corporation of America*, 24 Labor Arbitration Reports (BNA)

168, 172 (1954).

15.     It is also well established that a past practice cannot supersede the clear and unambiguous terms of a contract. *Anheuser-Busch, Inc. v. Teamsters Local 744, IBT*, 280 F.3d 1133 (7th Cir. 2002).  Since plaintiff officially held the classification of assistant chief engineer, he was, according to the express terms of the agreement, subject to dismissal without cause pursuant to the clear and unambiguous provisions of article 15, § 15.02(a).

## CORNER DID NOT VIOLATE THE AGREEMENT BY REFUSING TO RE-EMPLOY NEWMAN BASED ON HIS SENIORITY

16.     While it is true that article 15 does not exempt the assistant chief from article 10 and, therefore, the assistant chief retains certain seniority rights during employment, it does not follow that those rights trump or override other clear and unambiguous provisions of the agreement, such as article 15, § 15.02(a), or provide an absolute right to reclaim his position or bump a less senior employee from a different classification based on seniority, alone.

17.     The assistant chief engineer's seniority rights, for example, may conceivably be used during employment for many other purposes, (e.g, taking vacation or bidding for preferred shifts or stations).  Thus, there is nothing inconsistent in the notion that one can have seniority rights for certain purposes, yet be subject to dismissal without cause and without grievance rights.

18.     To interpret the agreement as Newman suggests would have the untoward effect of creating an endless loop wherein Corner could permissibly discharge Newman one day yet be forced to rehire him the next only to permissibly fire him again the day after that.  Such an absurd and unharmonious reading of the agreement is unnecessary.  Nothing in the agreement supports Newman's argument that he can use his seniority to override an otherwise permissible discharge or to displace a less senior employee from an entirely separate job classification.

19.     Further, article 10 does not provide an absolute right to a position based on seniority.  By its plain language, article 10 provides only a qualified "preference" based on seniority and subject to the employee's "ability to perform the work involved satisfactorily."  JX 5.  Moreover, article 3.06 states that the employer shall be "the sole judge of an applicant's competence and qualifications to perform the work of any job to be filled" and article 11.01 states, in the event of a rehire situation, that "[s]eniority, among other factors, will be considered by the employer when making these decisions."  JX 5 (emphasis added).  Thus, it is clear that seniority, alone, was not enough to force Corner to rehire Newman.

20.     Newman offered no evidence that Corner considered him able to satisfactorily perform as assistant chief engineer or that it failed to consider his seniority "among other factors" when it decided not to reinstate him.  Indeed, it is undisputed that Corner considered Newman's poor recent work performance when it determined to discharge him in the first place (JX 3 at 54-58 (Danzak deposition)) and by his own testimony, Newman considered himself assistant chief "in name only" and apparently did not perform any duties beyond those of a regular maintenance engineer.

21.     Newman's seniority did not obligate Corner to reinstate him as assistant chief engineer in 2009 as a matter of law and did not permit Newman to displace a junior employee from a separate job classification as a matter of law.

**LOCAL 501 DID NOT VIOLATE ITS DUTY OF FAIR DEALING BY SETTLING THE 2008 or 2009 GRIEVANCES**

22.     The duty of fair representation is construed narrowly and unions are afforded wide discretion in connection with acting in what they perceive to be the best interests of the

bargaining unit. *Peterson v. Kennedy*, 771 F.2d 1244, 1253-1255 (9th Cir. 1985). Unions are not liable for good faith non-discriminatory errors of judgment made in the processing of grievances. *Stevens v. Moore Bus. Forms, Inc.*, 18 F. 3d. 1443, 1447 (9th Cir., 1994).

23.   Under its duty of fair representation, a union has an obligation to avoid "arbitrary, discriminatory or bad faith conduct" in connection with the union's exclusive representational functions, including the processing of grievances. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

24.   A union acts arbitrarily only if it shows an egregious or reckless disregard for the rights of those it represents. *Patterson v. International Brotherhood of Teamsters, Local 959*, 121 F. 3d. 1345, 1349 (9th Cir. 1997). Mere negligence on the part of a union is not a breach of the duty of fair representation. *Slevira v. Western Surgar Co.*, 200 F. 3d at 1221. Moreover, even gross negligence is not 'unfair' representation. *Antrim v. Burlington Northern, Inc.*, 847 F.2d 375, 378 (7th Cir. 1988).

25.   The "arbitrary" prong of the duty of fair representation doctrine is applicable only where the defendant union engaged in procedural or ministerial conduct that foreclosed or extinguished the ability of the union to protect the employee's contractual rights and/or advance a meritorious grievance to arbitration. *Wellman v. Writers Guild of America*,146 F.3d 666, 670 (9th Cir. 1998); *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270 (9th Cir. 1983).

26.   Here, and with reference to the duty of fair representation claims advanced by plaintiff, Local 501 timely processed both the 2008 grievance, as well as the 2009 grievance. Neither grievance was dismissed or withdrawn due to a procedural mis-step on the part of defendant Local 501. Therefore, there is no triable issue of material fact as to the arbitrary prong

of the duty of fair representation analysis. *Dutrisac, supra; Ruzicka v. General Motors*, 649 F.2d 1207 (6th Cir. 1981).

27.     When the union's judgment is at issue - as to the most appropriate manner in which to evaluate or settle a grievance - the union breaches the duty of fair representation only when its actions are either "discriminatory" or "in bad faith."  *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1482 (9th Cir. 1992), and; *Marino v. Writers Guild of America*, 992 F.2d 1480, 1486 (9th Cir. 1993).

28.     For purposes of the "bad faith" analysis, a plaintiff is required to adduce evidence of "...fraud, or deceitful or dishonest action." *Marquez v. Screen Actors Guild*, 124 F.3d 1034, 1038 (9th Cir. 1997). "Bad faith" requires a showing of improper intent, purpose, or motive. *Spellacy v. Airline Pilots Association - International*, 156 F.3rd 120 (2nd Cir. 1998).

29.     A mere disagreement between a union and an individual employee, standing alone, does not constitute evidence of bad faith. *Moore v. Bechtel Power Company*, 840 F.2d at 637.  Similarly, unsubstantiated allegations of ill will cannot support a showing of bad-faith. *Conkle v. Jeong* , 73 F.3d 909, 916 (9th Cir. 1995). Moreover, a plaintiff must produce more than a "mere scintilla" of evidence that the union's decision making process was infected by hostility or other indicies of bad faith. *Patterson v. Teamsters*, 121 F.3d at 1349-1350.

30.     Here, Local 501 representative Ron Cozart exercised his best and honest judgment in concluding that neither the 2008 grievance – subsequent to defendant Corner's offer to settle the matter  –  nor the 2009 grievance warranted arbitration.  As to the 2008 grievance, Cozart properly reasoned that because § 15.02 clearly exempts the classification of assistant chief engineer from the protection against dismissal without cause proviso set forth at section

12.01 of the agreement, defendant Local 501 would not prevail before an arbitrator on a claim that defendant Corner had "wrongfully terminated" plaintiff. *Evangelista v. Inland Boatmen's Union of the Pacific*, 777. F.2d 1390, 1395-1396 (9th Cir. 1985).

31.    Cozart's reading and application of the agreement, as to the settlement that resulted in the withdrawal of the 2008 grievance, was proper because of (i) the express exclusions set forth at section 15.02 of the agreement; (ii) the absence of any other contractual provision, not exempted by operation of section 15.02, that constrained defendant Corner's right to unilaterally dismiss any employee holding the classification of assistant chief engineer, and (iii) the fact that article 13 of the agreement limits a grievance to a "...dispute regarding the interpretation and/or application of the provisions..." in the agreement and expressly excluded from the definition of a "grievance" any "...disputes specifically excluded in other articles of this agreement." *Eichelberger v. NLRB*, 765 F.2d 851, 856-858, (9th Cir. 1985).

32.    With regard to the 2009 grievance, Cozart - again in reliance on the explicit language set forth in the agreement - reasonably concluded that defendant Local 501 could not prevail at arbitration on a claim that plaintiff's alleged seniority rights were violated because (i) section 15.02 of the agreement plainly exempted plaintiff, in his status as an assistant chief engineer from accessing the article 13 grievance/arbitration process over the seniority issue, and (ii) even if Corner entertained the 2009 grievance as it did the 2008 grievance, there was no clear language in article 10 that unquestionably supported and protected plaintiff when defendant Corner dismissed him from employment, notwithstanding the facts and circumstances of his discharge. *Eichelberger v. NLRB*, 765 F.2d at 856-58; *Thompson v. Aluminum Co. of America*, 276 F.3d 651, 657-58 at n. 7 (4th Cir. 2002).

33.     Moreover, Newman's deposition testimony establishes that there was no bad faith on the part of defendant Local 501. On this score, Newman testified that he was making no claim that the settlement of either the 2008 grievance or withdrawal of the 2009 grievance was in any way evidence of a retaliatory motive on the part of defendant Local 501.  Indeed, Newman testified that he had no evidence to support such a claim and that, in any event, he did not believe that defendant Local 501's actions were motivated by a "grudge" against him. JX1 at 82:4-13; 110:15-112:2 (Newman). Therefore, there is no triable issue of fact as to whether defendant Local 501 acted in bad faith toward plaintiff Newman. *Conkle v. Jeong*, 73 F.3d 909 at 916 and *Moore v. Bechtel Corp.*, 840 F.2d at 637.

34.     For purposes of the duty of fair representation, "discrimination" means that the defendant union has, without a rational basis, treated similarly situated employees in a disparate manner. *Barton Brands v. NLRB*, 529 F.2d 793 at 799 (7th Cir. 1976). "Discrimination," within the duty of fair representation context, also occurs where the union evaluates identical grievances differently and cannot adduce an adequate or reasoned explanation for its conduct. *Taylor v. Teamsters Local 111*, 215 F. Supp. 2d 347 (S.D. N.Y. 2002). This alleged discrimination must be "...intentional, severe and unrelated to legitimate union objectives." Beck v. United Food and Commercial Workers, Local 99, 506 F.3d 874, 880 (9th Cir. 2007).

35.     Newman admitted in his deposition that he has no evidence that defendant Local 501 has ever pursued to arbitration a grievance against defendant Corner, or its predecessor, alleging either (i) that an assistant chief engineer was "wrongfully discharged" or (ii) that an assistant chief engineer may use accumulated seniority to avert dismissal from employment.  JX1 at 107:8-16 (Newman).  Moreover, Cozart also testified that he was unaware of any grievance

alleging the "wrongful termination" of an assistant chief engineer - not only against defendant Corner, but any other employer with which defendant Local 501 maintained a collective bargaining agreement with language similar to section 15.02 in the agreement - that was processed by defendant Local 501 to arbitration. Cozart Deposition, 120:21-24. Therefore, there is no triable issue of fact as to whether Local 501 treated plaintiff Newman in a discriminatory manner. *Beck v. United Food and Commercial Workers, Local 99*, 506 F.3d at 880

36.    Local 501 did not breach its duty of fair representation when it concluded Newman's "wrongful discharge" claim lacked merit and settled the 2008 grievance.

37.    Local 501 did not breach its duty of fair representation when it concluded Newman's 2009 seniority grievance lacked merit and withdrew that grievance.

38.    Based on the foregoing, the court finds that defendant Corner has established that there is no triable issue of material fact as to whether defendant Corner breached any part of the agreement by (i) terminating plaintiff's employment on October 15, 2008, or (ii) by not allowing plaintiff to use the agreement's seniority provisions, set forth at article 10 thereof, to regain employment with defendant Corner in or around September 2009.  Further, the court also finds there is no triable issue of fact with regard to plaintiff's claims that defendant Local 501 breached its duty of fair representation with respect to either the 2008 grievance or 2009 grievance. Further, as plaintiff has failed to establish a breach by Corner, it is appropriate to grant Local 501's motion for summary judgment because plaintiff cannot prevail in this hybrid action without demonstrating a breach by both the employer and the union.  *See Bliesner*, 464 F.3d at 913.  Accordingly, both defendant Corner and defendant Local 501 are entitled to summary judgment on all claims alleged by plaintiff in the instant action.

## ORDER

**IT IS ORDERED AND ADJUDGED** that the separate motions for summary judgment filed herein by defendant Corner and defendant Local 501 are hereby ***granted*** in their totality, that all of plaintiff's claims for relief are dismissed with prejudice and that plaintiff shall take nothing as against either defendant Corner or defendant Local 501.

**IT IS FURTHER ORDERED AND ADJUDGED**, that defendant Corner and defendant Local 501 are awarded their reasonable costs and that this action is dismissed in its entirety.


Dated: June  8  , 2012

Honorable James J. Mahan
United States District Judge
United States District Court for the District of
Nevada, Southern Division


SUBMITTED BY:

**LEVY, FORD & WALLACH**


Dated:  May 31, 2012                    _____/s/_____
Lewis N. Levy, Esq.
Attorneys for Defendant
International Union of Operations Engineers,
Local 501

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

This is to certify that on the 6th day of June, 2012, the undersigned, an employee of

Levy, Ford & Wallach, electronically filed the foregoing **[PROPOSED**] **FINDINGS OF FACT**

**AND CONCLUSION OF LAW and [PROPOSED] ORDER** with the U.S. District Court, and

a copy was electronically transmitted from the court to the e-mail address on file for:

Daniel Marks, Esq.
Mark J. Ricciardi, Esq.
Whitney J. Selert, Esq.

By: _____/s/_____
       Diane Morgenstern
       An employee of Levy, Ford & Wallach